May it please the Court, Michael Doane on behalf of the Appellant Antoinette Dumont. What we have here before the Court is once again whether or not the ride-through provisions of the Bankruptcy Code exist in light of recent legislation. It's a case of statutory construction versus previous Ninth Circuit case law and concerns the Bankruptcy Abuse and Prevention and Consumer Protection Act of October 5th, October 17, 2005, which concerns probably the most fundamental consumer protection statute in the Bankruptcy Code, since it deals with whether or not a debtor is able to continue keeping their car and ride through the bankruptcy when they maintain payments, maintain insurance, and whose only default would be an ipso facto provision. In this matter, we're seeking for the Ninth Circuit to provide clarification whether, in fact, the Parker case was overturned by BACPA legislation. And we're also seeking determination of a factual dispute, which was never clarified in the Bankruptcy Court or Bankruptcy Appellate Panel. The Bankruptcy Appellate Panel states that there are no facts in dispute, that the contract provides that if the debtor files for bankruptcy protection, a default occurs, and upon such default, the board may repossess the car. In the excerpts of records, it clearly does not state that. And I'll discuss that in a moment. So this case really before the Court is whether or not an ipso facto provision is triggered in the instant matter and does BACPA overrule the Parker decision. And really, it's a matter of statutory interpretation and looking at the plain meaning of the code and whether or not the plain meaning should be given effect or the plain meaning must be looked beyond because it is absurd or the congressional intent provides otherwise. And there are essentially three different provisions that were changed when BACPA was enacted. 521A, 2, 521A6, and 362H. And if you look at each one of those provisions and you go through each one of those provisions and apply the plain meaning to each one of those provisions, a plausible interpretation can arise and neither produce an absurd result and neither provision specifically states that ride-through was eliminated, just like neither provision specifically states that ride-through is maintained. Before we get into the language, this is kind of reverse order, what was Congress trying to do in your view when it made these changes? I think what Congress was trying to do was let the circuit split remain. Five circuits said ride-through exists. Four circuits said it didn't. And without providing any language, without providing any legislative history, they left that alone. They left the key language. That's all they wanted to do. They sure did an awful lot to get there. There were quite a few changes in the bankruptcy code. This was just one of many. This provision of ride-through has been around for decades. It's one of the most fundamental features of the bankruptcy. The vehicle is the debtor's fresh start. Without the vehicle, the debtor is unable to go to work, unable to go to school, religious organizations, what have you. And by forcing the debtor to choose now a reaffirmation agreement or surrender the vehicle when they're completely not in default runs contrary to the debtor's fresh start and policy behind it. Is it true that the Parker case relied on the text of 521A2A, the if applicable phrasing, to come to the conclusion that a ride-through exists? Is that the same basis as the other several circuits that came to the same conclusion? Is that the same textual? To various degrees. They looked at the if applicable language. There was also the savings clause, 521C2. And presumably Congress knew that, that those were the bases of the decisions. And were those sections changed? No, they were not. And that's one of the implications was that Congress knew there was this circuit split. And in the Ninth Circuit, it solely dealt with if applicable, meaning that the universe of options of surrender, redemption, reaffirmation were not the universe. And then the savings clause, which dealt with whether or not the debtor loses any interest or gives up any rights because of that. Nothing in subparagraph A and B of this paragraph shall alter the debtor's or trustee's rights with regard to the property. That same language is there, except as provided now under 362H. Well, 362H simply provides for relief of stay. If anything, it can be argued that it creates more rights for the debtor because relief of stay and 362H also abandons the property. It then provides the debtor the car back, the debtor's interest. Why don't we get to the language of the statutory provisions themselves? And we can either start with 362 or 521, whichever you'd like. Well, 362 was added. And ironically, similar language was used in creating an undefined universe of options. Well, let's take the language. I'm looking at 362H1, and I'm just going to highlight the active portions, and you can tell me if I'm misreading it. But it says in the case and so forth, the stay provided by subsection A is terminated and such personal property shall no longer be property of the estate if the debtor fails within the applicable time, A, to file a timely, any statement of intention to indicate that the debtor will either surrender such personal property or retain it, and if retaining, either redeem or enter into an agreement. Doesn't that very much limit the options? Doesn't that pretty much exclude the ride-through? You could argue it does, but why would they place the word as applicable behind it? You could delete as applicable, and you would have a defined universe, three options. Instead, they used applicable, and they used the word as. It's almost as if they borrowed from 521 the same language that created ride-through in the first place. If applicable, as applicable, when applicable, these all tend to open up the universe of options. Is there any place in the legislative history of AFCPA that says anything like, Congress is aware of this circuit split, and we're trying to either keep everything in the status quo, allow for ride-through, or do in this theory? There's no legislative history. And it's just as the Parker case was decided, with virtually no legislative history. In the case of Parker, the court stated, we see no reason to reach beyond this plain language. The legislative history is of little assistance in interpreting the congressional intent behind 521. And so against this backdrop, you've got Congress literally creating the same thing all over again. There's nothing in the Senate report. There's nothing in the House that provides any indication on 362. There's a little bit in the House that comments in 521A6, but nothing on 362. And another problem we have with 362H is the universe of three options, if that's the only universe, which then conflicts with 521A6. 521A6 provides no option for assumption. 362H provides for assumption. If you take both those provisions down then to 521D, you could arguably still have a default when there is a lease assumption. If the debtor performs a statement of intent and assumes a lease under 362H, he still has not complied with 521A6. What about 6A, the debtor enters into an agreement with the creditor pursuant to 524C with respect to the claim secured? Would that permit assumption there or not? No. That is for reaffirmation agreements only. Assumptions are governed by 365P. But in looking at 521A6, you've also got some problems. Stepping back, 362H says nothing about eliminating rideshare. There's no congressional intent there. There's nothing in the statute. Go to 521A6, again, same thing. There's nothing in the black and white text that says rideshare. There are some events that are triggered, but nothing that says rideshare is eliminated. And virtually nothing in the legislative history that says the same thing. 521A6 more or less repeats the requirements of 521A to either surrender, redeem, or reaffirm. And in the event that that does not take place, then the property is no longer part of the estate. Are you looking at 7, if the debtor fails to act? Right. The stay is terminated. If 521A2A is terminated and the property is no longer property of the estate and the creditor may take whatever action to such property is permitted by the applicable non-bankruptcy law, that certainly doesn't help, does it, in terms of your interpretation? Well, I think, again, the key words is what Congress keeps doing, 521A2 applicable. They're saying, okay, it's no longer part of the estate. The creditor can do whatever they want according to applicable non-bankruptcy law. Well, if you've got Parker decided by the Ninth Circuit that says ride-through exists, then what applicable non-bankruptcy law would allow them to overstep Parker? Again, there's no clear intent that ride-through was eliminated here. Now, if you had a case where the debtor wasn't paying and Parker did not apply, then, sure, there would be a default where ride-through doesn't exist and applicable law would allow a repossession of the automobile. But, again, there's nothing in here that is saying that Parker was eliminated or ride-through was eliminated, the fourth option. Counsel, you're down to about two minutes. You might want to reserve and then we'll hear what the other side has to say. We're all trying to interpret the statutory language. You have 15 minutes. Good morning, Your Honors. Excuse me. Randall Mazinski for the law firm of Cooks & Toole and Gage Duffy and Woog on behalf of Ford Motor Credit. And to start, Your Honor, just to summarize our basic position is that the 2005 amendments to the Bankruptcy Code did close the universe of options that are available to a Chapter 7 debtor with regard to personal property security interests. Your Honor, Judges Scanlon asked the question, if the congressional intent was to basically preserve the status quo and leave the circuit split in place, they certainly went about it in an unusual way. A lot of ink was spilled. One code section was amended. Three code sections were adopted or enacted, rather. That didn't exist previously. Certainly, Congress, if they wanted to preserve the status quo, one of the ways they could have done that was to simply leave the statute alone entirely. Well, the changes that were made not only are numerous but, to me at least, quite confusing. I just find it difficult to understand what they were getting at. And I find it particularly difficult to understand why they didn't change the text of 521A2A, which was the basis for the ride-through decisions, the pro-ride-through decisions. And they was left untouched. And nowhere is there something in another section that says, notwithstanding anything to the contrary in 522, excuse me, 521A2A, or something like that. There's no cross-reference that I'm aware of. So I don't know how to make sense of this. There's two aspects to Your Honor's question. First, the Parker analysis, which is the same analysis that was undertaken by the other circuit courts. There was five circuit courts that held that ride-through was a viable option. It was a two-part analysis that Parker undertook. It was based first and foremost upon the term, if applicable, in 522A2A. It was also based upon the Savings Clause. And the Savings Clause basically stated that nothing in the previous two subsections shall affect the debtors or the trustees' rights and property. That Savings Clause has been drastically, drastically amended to create a very specific exception as to personal property security interests under Section 362H. In addition to that, it's not surprising that Congress would choose to amend the bankruptcy code to eliminate the ride-through option in the way that they did. Section 521A2 applies to all secured interests, both secured claims that are security interests in real property and secured interests in personal property. Now, it seems very clear that Congress did not intend to change the law at all with regard to the debtors' options as they pertain to real property security interests. However, Congress did take great pains to amend the law as it applies to personal property security interests, and they did that in two ways. Through the enactment of Section 362H, which is a specific exception to the Savings Clause under Section 521A2C, and by the enactment of Section 521A6. At first read, the two sections appear to be very, very, there seems to be a great deal of overlap, seem to be very, very close. However, Section 521A6 has specific application to purchase money security interests in personal property, whereas Section 362H applies to non-purchase money security interests or all security interests essentially in personal property. 521A6 creates additional protections for purchase money secured lenders in personal property, and it also uses a very curious term, the debtor shall not retain the property. Now, the statement of intentions in this case is phrased in a manner that is consistent with the bulk of the statement of intentions that were basically filed. Wait a minute. Which statute contains the? I'm sorry. It's 520, 521A6 contains the shall not retain. Where is it in shall not retain? In the actual statute. It's in the first line. Okay. In the case under this title, the debtor shall is incorporated from the first line, shall not retain possession of personal property. Okay. Correct. The statement of intentions in this case, which as I indicated, was practically verbatim from hundreds and hundreds of statements of intentions I've seen for many years since Parker was decided in 1998, was that the debtor shall retain the collateral and make regular payments. By stating in that section the debtor shall not retain, Congress negated specifically that option as to a purchase money security interest. Now, there's been some bankruptcy court jurisprudence as to what does shall not retain mean, that the bankruptcy court has the authority to order turnover of the vehicle or what have you. The bankruptcy courts have been essentially unanimous that it doesn't create a federal remedy for the creditor. It doesn't, excuse me, authorize the court to order that the vehicle be turned over, but it makes clear that the retention option is no longer a viable option to the debtor. Why wouldn't Congress have used specific words describing the purchase price if you're drawing a distinction between the security for purchase and other security interests, but it doesn't actually say that in so many words? Why should we read that into it? Well, for a couple of reasons, Your Honor. The primary one really is that the term is just absolutely ambiguous. The term purchase price is defined, neither defined nor used anywhere else in the bankruptcy code. It's not defined or used in the Uniform Commercial Code. It's not defined nor used in the Truth in Lending Act, the California Motor Vehicle Sales and Finance Act, or any other statute that I can find. It's not used or defined in the contract between the parties. The contract between the parties refers to the price in two different places on the contract. One is called total sales price. The other is called total cash price. They're expressed as two different numbers. The total sales price includes unearned interest. Using the Henry Donald Black's Law Dictionary definition of purchase price, unearned interest would not typically be considered part of the purchase price of a piece of property. By the same token, in the contract, the total cash price does not take into account license fees, which are part of the price specifically under Section 9103 of the Commercial Code, and Comment 3 there, too. But this does relate to the filing somehow as to which a creditor has an allowed claim for the purchase price secured and hold in part by the personal property. Correct. And in this case, just parenthetically, Your Honor, there is no dispute that Ford has an allowed claim in the case. We filed a proof of claim. There was no objection to the claim. It's an allowed claim. Now, the controversy is what does this term purchase price mean? And even my opponent argues that the term is ambiguous, ambiguous to the extent that the entire code section ought to be found to be unconstitutionally. When you filed your claim, the number you inserted for the claim was probably something less than the original amount of the loan, was it not?  Well, an original amount of the loan wouldn't necessarily be the purchase price, Your Honor, because that wouldn't take into account items like manufacturer's rebates, which was something that the debtor had in this instance. So the original amount of the loan in this case, and virtually every case that you can imagine, is not going to correlate directly to the, quote, unquote, purchase price of the vehicle. Because if the debtor puts $1 down, if the debtor finances a warranty, if the debtor gets a manufacturer's rebate, all of these affect the purchase price as the term is used in the Donald case. Our position is that the term defies a plain meaning, plain meaning definition, is ambiguous, is not used anywhere else in the bankruptcy code, and that the court can and should resort to the legislative history as an aid to construction, just as the appellate panel did in this case, just as the court did in the Steinhaus case, which we cited in a brief. And the House report, which is also the language in the House report, is cited in the Bass decision, states that Section 521-86 was intended to apply to claims secured by security or purchase money security interest in personal property. Your Honor, I know that the court is looking for papers, but if I can move to the next point. Okay, very good. The other point that was raised by my colleague was that 521-86 doesn't square with Section 362-H, that it's inconsistent with Section 362-H because it doesn't provide for assumption. And I believe that that is additional evidence for my client's position that 521-86 applies to purchase money security interests because assumption is a concept that is specific to leases. Section 362-H basically applies both to security interests as well as leases. 521-86 does not apply to leases. There's no option there to assume, and you don't assume a non-executory contract. You either assume an executory contract or a lease. It's a term of art used in Section 365 of the Bankruptcy Code. The fact that that's missing from Section 521-86 is additional support for the interpretation of that section that it applies only to purchase money security interests. This is the conclusion that the appellate panel reached. We believe it's the correct conclusion, and we believe that it's supported by the text of the statute. Your Honor, if the Court has any additional questions, I have a few minutes left, but I guess I'll summarize by indicating that the weight of authority, the unanimous weight of authority as noted by the appellate panel in their written decision, is that on these facts, the write-through option that existed under the pre-2005 Bankruptcy Code and as described in the Parker case has been eliminated by Congress, that there is absolutely no authority whatsoever that on these facts, where a debtor has filed a statement of intentions that indicates that she intends to retain the collateral and make regular payments and does not enter into a reaffirmation agreement or redeem the collateral, that write-through is an option that's available to Ms. DeMont. There is no authority. There's been quite a bit of parsing of the language by my opponent, but there's been no authority upon which it's been based. His brief is avoided. Any other circuits where they don't use the BAP or were there any case percolating in the bankruptcy courts that you know of? No, Your Honor. This was a bit of a hot-button issue for a while. It seems to have died out. This is the only circuit court case on the matter. There are an odd sprinkling of district court cases. I believe that I filed a notice of supplemental authority of a district court case called Henry Jones. That was decided a couple of months ago. But, no, this is- Any of the district court cases cite the Parker case? Yes. Unfavorably. Yes, they do. Yes, they do. They cite the Parker case in conjunction with the remaining, with the other four circuit cases and essentially treat them as a whole because their analyses were virtually identical. Another point to raise is- Did they split in terms of following Parker? I'm sorry? Did they split in terms of following Parker? Did they all follow Parker? Did they all reject Parker? Prior to 2005? If I understand the question correctly, there was a circuit split prior to the 2005 amendments. It was five circuits that- There's nothing post-2005? Nothing. Nothing. This is the highest court to hear this matter since 2005. And there is nothing to my knowledge that's teed up in circuits. You can't duck. No, no. You cannot. But interestingly enough, Your Honor, of the five circuits that did previously follow this hay and drive option or fourth option, right through option, however you want to call it, there have been cases from bankruptcy courts that have specifically said that our circuit decision has been overruled by the amendments. The Donald Court came out of the fourth circuit, which was the circuit where the Belanger case was decided. Donald, which took a very, very close construction of these statutes, nonetheless concluded that as a whole, Congress had been successful in eliminating the right through option. The Rowe case, which is another seminal case, and this came out of the tenth circuit, Rowe stated in its decision that the Lowery case, which was the case that essentially agreed with Parker, was no longer good law post-2005. And, of course, the Steinhaus decision, which is from a bankruptcy court in Idaho. That case and this case that both came up from the Southern District of California and through the bankruptcy appellate panel have concluded that the right through option is no longer viable. And I see that I'm out of time. Thank you, Counsel. Thank you very much, Your Honor. Mr. Dolan, you have some reserved time. Thank you, Your Honor. I'll be brief. A few days ago I did find another case. It's a district court case that affirmed the bankruptcy court case called Coastal Federal Credit Union v. Landon Hardiman 398. Counsel, please fill that site out on copies of gum sheets that you can get from the Deputy Clerk. I will. But that case basically held that a limited ride-through does exist where the debtor performs the act reaffirming, but the bankruptcy court denies it, sort of a ride-through through the back door is what they're calling it. And there's numerous cases out there which are now providing this, where either the attorney doesn't sign off on it, where they send the debtor into court and the bankruptcy court denies it. Many courts are now holding that ride-through does exist under that scenario. The BAP did not recognize any of those cases whatsoever, even though they were out there. They did not cite any of them. The case I just mentioned does an excellent analysis of the terms allowed claim and purchase price. And in doing so, it holds true that the plain meaning should be followed. The allowed claim is the claim that's filed by proof of claim. We don't dispute that, but basically that allows a debtor to see is there an ipso facto clause, which in this case with their allowed claim, they didn't attach that part. And it also allows a debtor to see if there's an enforceable security interest. It also gets into purchase price and distinguishes that Congress used purchase money security interest throughout the code in different terms of art, but specifically left purchase price here. And there's no legislative history whatsoever to differentiate between why they did that there and not somewhere else. And regardless, you've got to look at the plain meaning unless it gives an absurd result. And the court said it doesn't give an absurd result. Post-9-11, you had many finance companies entering into no money down, no interest, no payments for X amount of days. And it was to curb the abuse of a debtor who might file bankruptcy within 30 or 60 days without ever making a payment. That same provision or nearly same provision is in Chapter 13 on 910 claims. You can't cram down 910 claims to prevent that sort of abuse. I do want to bring up one last point, and that's 521D. Again, the plain meaning of that statute refers to a bankruptcy proceeding. Now, the bankruptcy code in 365E and 541C talks about ipso facto clauses in bankruptcy cases. Congress in their infinite wisdom in 521D used bankruptcy proceeding. This is precisely the same terminology that Ford used in their ipso facto provision in their position that a default occurred. Our position to the Bankruptcy Court, to the Bankruptcy Appellate Panel was this language says if a bankruptcy proceeding takes place, then a default might arise. We still maintain there was never a bankruptcy proceeding. There was a bankruptcy case. There was no relief of stay. There was no objection to claim. 28 U.S.C. 1334 talks about cases and proceedings. 365E talks about a case. 541C talks about a case. 521D talks about a proceeding. And the final thing on 521D is that it only triggers a default. It does not allow a party to act. 521A.6 says you can take an action. 521D doesn't say that. It just says a default arises. Well, that does not mean you can then do something on that default. But you could to a non-debtor party, such as if there's an insurance tax claim. Thank you, Counsel. Your time has expired. The case just argued will be submitted for decision, and the Court will adjourn. All rise. Hear ye, hear ye. Of those having had business before the Soccer Bowl Court, the United States Court of Appeals for the Ninth Circuit shall not be part of this Court's adjournment.
judges: Goodwin, O'scannlain, Graber